CLERK'S OFFICE U.S. DIST COURT
AT ROANOKE, VA
FILED

FEB 2 2 2008

JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| CHRISTY L. DELEONARDIS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5:07CV00050 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| MICHAEL J. ASTRUE, | ) | By: Hon. Glen E. Conrad |
| Commissioner of Social Security, | ) | United States District Judge |
| | ) | |
| Defendant. | ) | |

Plaintiff, proceeding pro se, has filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claims for disability insurance benefits and supplemental security income benefits under the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423, and 42 U.S.C. § 1381 et seq., respectively. Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). This court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that plaintiff was not under a disability at any time prior to the final decision of the Commissioner. If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971).

The plaintiff, Christy L. Deleonardis, was born on January 19, 1963. She eventually completed the tenth grade. Mrs. Deleonardis has past relevant work experience as a hairdresser, manicurist, and personal care attendant. She last worked on a regular and sustained basis in

2004. Mrs. Deleonardis filed applications for disability insurance benefits and supplemental security income benefits on December 8, 2004. She alleged that she became disabled for all forms of substantial gainful employment on September 24, 2004, due to Lyme disease, low grade fever, fatigue, muscle pain, low energy, bronchitis, neck pain, depression, asthma, hematuria, diarrhea, and headaches. Mrs. Deleonardis now maintains that she has remained disabled to the present time. As to her application for disability insurance benefits, the record reveals that Mrs. Deleonardis met the insured status requirements of the Act at all relevant times covered by the final decision of the Commissioner. See, gen., 42 U.S.C. § 423.

Mrs. Deleonardis's claims were denied upon initial consideration and reconsideration. She then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated November 9, 2006, the Law Judge also determined that Mrs. Deleonardis is not disabled. The Law Judge found that plaintiff suffers from Lyme disease with headaches, low grade fever, fatigue, and pain; asthma/bronchitis; hematuria; diarrhea; and an affective disorder (depression). The Law Judge then determined that while Mrs. Deleonardis's impairments are severe within the meaning of the regulations, they do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4. See 20 C.F.R. §§ 404.1520(c)-(d) and 416.920(c)-(d). Based on his review of the entire record, the Law Judge found that Mrs. Deleonardis retains the residual functional capacity to perform a limited range of light work:

> [T]he claimaint has the residual functional capacity to perform light work requiring lifting up to twenty pounds occasionally and ten pounds frequently, standing and/or walking up to six hours in an eight-hour workday, sitting up to six hours in an eight-hour workday, performing unlimited pushing and/or pulling including

2

> operation of hand and/or foot controls, with no postural, manipulative, visual, communicative or environmental limitations and abilities to understand, remember and complete simple instructions, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, sustain a normal workday and workweek without interruptions from psychologically based symptoms, and get along with co-workers or peers without distracting them or exhibiting behavioral extremes, but moderate limitations in social functioning, and attention, concentration, and persistence.

(Tr. 16-17). After considering testimony from a vocational expert, the Law Judge ruled that Mrs. Deleonardis retains sufficient functional capacity to perform the requirements of her past relevant work.[1] Accordingly, the Law Judge ultimately concluded that she is not entitled to benefits under either federal program. See 20 C.F.R. §§ 404.1520(f) and 416.920(f). The Law Judge's opinion was adopted as the final decision of the Commissioner by the Social Security Administration's Appeals Council. Having exhausted all administrative remedies, Mrs. Deleonardis has now appealed to this court.

While the plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether the plaintiff is disabled for all forms of substantial gainful employment. See 42 U.S.C. §§ 423(d)(2) and 1382c(a). There are four elements of proof which must be considered in making such an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described through a claimant's

---

[1] Specifically, the Law Judge indicated that Mrs. Deleonardis could return to her past work as a home care/personal attendant. However, as will be discussed infra, the vocational expert instead testified that Mrs. Deleonardis could return to her past work as a manicurist. In any event, the Law Judge went on to discuss the vocational expert's testimony that an individual with plaintiff's residual functional capacity could also perform other light and sedentary work roles that exist in significant numbers in the national economy. (Tr. 22).

3

testimony; and (4) the claimant's education, vocational history, residual skills, and age. Vitek v. Finch, 438 F.2d 1157, 1159-60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

After a review of the record in this case, the court is constrained to conclude that the Commissioner's final decision is supported by substantial evidence. The Law Judge's opinion reflects a thorough evaluation of Mrs. Deleonardis's medical problems and the extent to which they affect her ability to work. Although Mrs. Deleonardis suffers from several physical and emotional impairments, substantial evidence supports the Law Judge's determination that she retains the residual functional capacity to perform a limited range of light work.

The medical record reveals that Mrs. Deleonardis has been treated by Dr. Stephen Bryant, her primary care physician, since 2003. (Tr. 224). During an April 2003 appointment, plaintiff reported that her symptoms of depression had increased as a result of her boyfriend's recent death. Dr. Bryant prescribed medications to assist with depression and insomnia. (Tr. 223). Three months later, plaintiff was prescribed Flexeril for back pain. (Tr. 222).

In September of 2003, Mrs. Deleonardis reported that she was still depressed over her boyfriend's death, and she complained of coughing and shortness of breath. Dr. Bryant noted that plaintiff was smoking two packs of cigarettes per day. He prescribed Albuterol, a cough suppressant, and Wellbutrin for plaintiff's depressed mood. (Tr. 221).

During a June 2004 appointment, plaintiff complained of fatigue, decreased energy, and a low-grade fever. Dr. Bryant requested lab work to test for Lyme disease, and noted that there was no source of infection. (Tr. 220).

4

In September of 2004, plaintiff was examined by a nurse practitioner in Dr. Bryant's office. During the examination, plaintiff reported being told that she was in the "late stages" of Lyme disease after undergoing blood tests. (Tr. 216). Although the nurse practitioner did not have Dr. Bryant's notes on plaintiff's lab work, she prescribed Vicodin for pain. (Tr. 216).

During a follow-up appointment two weeks later, plaintiff complained of intermittent muscle pain and cramping. However, her physical examination revealed no palpable muscle spasms, no edema, and good range of motion. Dr. Bryant provided a refill prescription for Vicodin and changed plaintiff's medication for depression from Wellbutrin to Celexa. (Tr. 215).

Plaintiff returned to Dr. Bryant on January 19, 2005. Dr. Bryant noted that plaintiff continued to experience fevers and fatigue, and that plaintiff's fevers were likely secondary to chronic sinusitis and obstruction. He prescribed Nasonex and a daily saline spray, and advised plaintiff to stop smoking. (Tr. 211).

On April 20, 2005, plaintiff presented with chronic fatigue and a low grade fever. Dr. Bryant diagnosed plaintiff with questionable chronic fatigue syndrome. He prescribed a trial of Prednisone and a refill of Vicodin. (Tr. 209).

That same day, Dr. Wendy Underhill performed a consultative psychological evaluation at the request of the state disability agency. During the evaluation, plaintiff reported that she was diagnosed with Lyme disease in June of 2004, but that the diagnosis was changed to chronic fatigue syndrome. She complained of chronic fatigue, muscle pain and stiffness, difficulty walking, intermittent low-grade fevers, occasional incontinence, and asthma. Plaintiff also reported being depressed on a daily basis. (Tr. 189). On mental status examination, plaintiff was oriented to time, place, and person; her recall was three out of three objects after five minutes;

she obtained a perfect score on the memory test; and her intelligence appeared to be average. (Tr. 190). Dr. Underhill diagnosed an adjustment disorder with depressed mood secondary to a medical condition. The psychologist opined that plaintiff may have difficulty maintaining sustained concentration and an acceptable work pace due to chronic fatigue, and that plaintiff may have difficulty handling job stress due to her diminished frustration tolerance and irritability, but that plaintiff appeared capable of understanding, remembering, and carrying out simple to moderately complex job instructions. (Tr. 190-191).

On April 30, 2005, Dr. Robert Sutton, a state agency psychologist, assessed plaintiff's mental residual functional capacity. (Tr. 193-195). Based on his review of the record, Dr. Sutton opined that plaintiff is moderately limited in her ability to understand, remember, and carry out detailed instructions; her ability to maintain attention and concentration for extended periods; her ability to complete a normal workday and workweek without interruptions; her ability to get along with co-workers; and her ability to respond appropriately to changes in the work setting. (Tr. 193-194). In all other work-related areas, Dr. Sutton opined that plaintiff is not significantly limited. (Tr. 193-194). A second state agency psychologist, Dr. Yvonne Evans, affirmed Dr. Sutton's assessment on January 12, 2006. (Tr. 195).

Plaintiff returned for a follow-up appointment with Dr. Bryant in January of 2006. Dr. Bryant noted that plaintiff was walking with a cane due to fatigue and joint pain, but that her fatigue appeared to be a "little less." (Tr. 257). Dr. Bryant also noted that plaintiff had no inflammation, no effusion, and good range of motion. He prescribed Zoloft to help with anxiety, but noted that plaintiff's mood had improved overall. (Tr. 257).

6

On January 7, 2006, Dr. Karissa Hackelton performed a consultative physical examination at the state agency's request. On physical examination, plaintiff was alert, awake, and oriented, and she had good concentration skills. (Tr. 229). Dr. Hackelton noted that plaintiff entered the exam room without difficulty, that she sat comfortably during the examination, and that she did not have any difficulty getting on or off the examination table. (Tr. 229). While plaintiff walked slowly and used a cane, Dr. Hackelton noted that she did not feel that the cane was necessary. (Tr. 229-231). Plaintiff had no difficulty with finger-to-nose or heel-to-knee movements, she had a normal heel-to-toe gait, she had no difficulty walking on her heels or toes, she could hop and stand on one foot, and she had no difficulty with tandem gait. Plaintiff's spine, shoulders, elbows, hips, knees, ankles, wrists, and fingers all had normal and full range of motion. While plaintiff complained of some leg cramps after hopping, there was no tenderness to palpation over plaintiff's back. Her joints were not swollen, her sensation was intact, and her motor strength in all muscle groups was five out of five. (Tr. 230). Based on the examination, Dr. Hackelton opined that plaintiff is capable of standing and walking for approximately four hours in an eight-hour workday; that plaintiff has no restrictions on her ability to sit; that she can lift ten pounds frequently and twenty pounds occasionally; and that she has no postural, manipulative, visual, communicative, or environmental limitations. (Tr. 231). Dr. Hackleton also noted that the assessed limitations were based on plaintiff's subjective statements regarding her fatigue, which Dr. Hackleton did not observe during the examination: "[S]he may get tired very often. However, I am just not seeing that today." (Tr. 231).

Dr. Luc Vinh, a state agency physician, completed a physical residual functional capacity assessment on January 12, 2006. (Tr. 235-241). Based on his review of the evidence, Dr. Vinh

7

concluded that plaintiff is capable of performing a full range of light work. (Tr. 236-238). Dr. Vinh noted that he gave great weight to the consultative examination performed by Dr. Hackleton, which was consistent with his light work assessment. (Tr. 241).

On June 13, 2006, plaintiff returned to Dr. Bryant for a five-month follow-up appointment. While she complained of continued fatigue and pain, Dr. Bryant noted that plaintiff's back was non-tender and that she had no edema. Dr. Bryant prescribed a trial of Lyrica and renewed plaintiff's prescriptions for Zoloft, Vicodin, and Ativan. (Tr. 263).

On October 12, 2006, Dr. Bryant completed a medical assessment of plaintiff's ability to perform work-related activities. Dr. Bryant opined that plaintiff can lift up to five pounds occasionally; stand and/or walk for a total of thirty minutes in an eight-hour workday; sit for a few hours during an eight-hour workday; occasionally perform postural movements; and engage in limited reaching in all directions. (Tr. 265-266). Dr. Bryant further indicated that plaintiff must avoid essentially all environmental irritants and workplace hazards, and that plaintiff is totally disabled for all work activity. (Tr. 267-268).

During the administrative hearing on October 13, 2006, Andrew Beale testified as a vocational expert. The Law Judge asked the vocational expert "to consider for the purposes of a hypothetical that we have an individual with the same age, educational background, and vocational history as [Mrs. Deleonardis]," and that "such a person could perform work at the levels indicated" in the physical residual functional capacity assessment completed by Dr. Vinh on January 12, 2006, and the mental residual functional capacity assessment completed by Dr. Sutton on April 30, 2005. (Tr. 306). The vocational expert testified that the physical residual functional capacity assessment would allow for both light and sedentary work. When asked if

8

the physical and mental restrictions noted in the assessments would permit the performance of plaintiff's past work, the vocational expert testified that an individual with such restrictions could perform plaintiff's past sedentary work as a manicurist, or other light work roles, such as those of a simple cleaner, mail sorter, laundry sorter, or grader.[2] (Tr. 307). When asked to consider Dr. Hackleton's assessment of plaintiff's physical residual functional capacity, the vocational expert testified that the jobs of manicurist and mail sorter would still be available. The vocational expert also identified light work roles as a counter clerk or parking garage cashier, both of which would permit an individual to alternate between sitting and standing. (Tr. 308-309).

Having reviewed the record, the court finds substantial evidence to support the Law Judge's decision that Mrs. Deleonardis retains the residual functional capacity to perform a limited range of light work, and thus that she is not totally disabled. While the plaintiff has complained of persistent fatigue, low-grade fevers, and muscle aches, there is little to no objective evidence of any work-related functional limitations. Dr. Bryant's physical examinations routinely revealed a non-tender back, no palpable muscle spasms, good range of motion, intact reflexes, and no edema. (Tr. 215, 219-220, 257, 263). Moreover, plaintiff's treatment has been conservative, consisting solely of prescribed medications such as Flexeril, Vicodin, and Lyrica. (Tr. 216, 222). There is no evidence that Dr. Bryant ever recommended a TENS unit, physical therapy, pain clinic management, or other more aggressive treatment options for pain.

---

[2] The vocational expert testified that plaintiff's past relevant work as a home attendant would be classified as medium work (Tr. 305), and thus would be precluded by Dr. Vinh's assessment of plaintiff's physical residual functional capacity.

9

The Law Judge's assessment of plaintiff's physical residual functional capacity is also supported by Dr. Hackleton's consultative report and the opinions of the state agency physicians. Dr. Hackleton's examination failed to reveal any physical limitations that would preclude substantial gainful employment. Plaintiff had full range of motion and motor strength in all muscle groups; her joints were not swollen; her back was non-tender; and she had no difficulty entering the examination room, walking on her heels or toes, or hopping or standing on one foot. Based on her examination, Dr. Hackleton ultimately opined that plaintiff is capable of performing light work that requires standing and/or walking up to four hours in an eight-hour workday. Consistent with Dr. Hackleton's assessment, the state agency physicians who assessed plaintiff's physical residual functional capacity opined that she remains capable of performing light work.

The court also finds substantial evidence to support the Law Judge's decision to assign lesser weight to the residual functional capacity assessment completed by Dr. Bryant in October of 2006. The Law Judge emphasized that Dr. Bryant's assessment was based on plaintiff's subjective complaints, and that the extreme limitations noted in the assessment were not supported by the medical evidence, including Dr. Bryant's own examination records. As previously stated, Dr. Bryant's treatment notes routinely revealed a non-tender back, no palpable muscle spasms, good range of motion, intact reflexes, and no edema. Dr. Bryant's assessment was also inconsistent with the other medical opinions on record, including those of the consultative examiner and the state agency physicians who concluded that plaintiff retains the capacity for light work. Accordingly, the court concludes that the Law Judge's decision to

10

discount the assessment completed by Dr. Bryant is supported by the record. See 20 C.F.R. §§ 404.1527(d) and 416.927(d).

Having found substantial evidence to support the Commissioner's determination that Mrs. Deleonardis's impairments do not render her totally disabled, the court concludes that the Commissioner's final decision must be affirmed. In affirming the Commissioner's final decision, the court does not suggest that Mrs. Deleonardis is totally free of pain and discomfort. However, it must be recognized that the inability to work without any subjective complaints does not of itself render a claimant totally disabled. Craig v. Chater, 76 F.3d 585, 592 (4th Cir. 1996). It appears to the court that the Administrative Law Judge gave full consideration to all of the subjective factors in adjudicating plaintiff's claims for benefits. It follows that all facets of the Commissioner's final decision are supported by substantial evidence.

As a general rule, resolution of conflicts in the evidence is a matter within the province of the Commissioner, even if the court might resolve the conflicts differently. Richardson v. Perales, supra; Oppenheim v. Finch, 495 F.2d 396 (4th Cir. 1974). For the reasons stated, the court finds the Commissioner's resolution of the pertinent conflicts in the record in this case to be supported by substantial evidence. Accordingly, the final decision of the Commissioner must be affirmed. Laws v. Celebrezze, supra.

The Clerk is directed to send certified copies of this opinion to all counsel of record.

ENTER: This 22d day of February, 2008.

*/s/ Glen Conrad*
United States District Judge